## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTWAUN FREEMAN,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 23-CV-2641** |
| | : | |
| **LT MOORE, *et al.*,** | : | |
| **Defendants.** | : | |

### <u>MEMORANDUM</u>

**SÁNCHEZ, J.**                                                    **APRIL 9, 2024**

Pro se Plaintiff Antwaun Freeman, a prisoner currently incarcerated at SCI Chester, brings this lawsuit under 42 U.S.C. § 1983 against two prison employees, claiming he was subjected to excessive force and denied medical attention for his injuries while incarcerated at the George W. Hill Correctional Facility.  (*See* ECF No. 27 ("Am. Compl.").) Defendant Lt. Moore moves  to dismiss the action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, for a more definite statement under Rule 12(e). For the following reasons, the Court will grant the motion in part and deny it in part.

### I.      FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Freeman's initial Complaint raised Eighth Amendment claims for damages against three correctional officials at the George W. Hill Correctional Facility — Lt. Moore, CO Bryant and Sgt Bryant — based on allegations that in August 2021, these Defendants were involved in an incident during which Freeman was sprayed with mace, slammed to the ground, punched in the face, kicked in the back, had a boot placed on his neck, and was thereafter denied medical treatment.  (ECF No. 2 at 3, 5, 12-13.)[1]  In a July 13, 2023 Order, the Court granted Freeman

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

leave to proceed *in forma pauperis* and directed the Clerk's Office to serve waivers of service on

the Defendants, pursuant to Federal Rule of Civil Procedure 4(d).  (ECF No. 5.)  Since the

waivers were not returned, the Court subsequently directed service of the Complaint by the

United States Marshal Service pursuant to Federal Rule of Civil Procedure 4(c)(3).  (ECF Nos.

8-10.)  It initially appeared as though service was successfully made on all three Defendants via

electronic service with the Office Manager for the George W. Hill Correctional Facility.  (ECF

No. 12.)

On October 5, 2023, Lt. Moore filed a motion to dismiss Freeman's claims against him,

while counsel filed a motion to strike service of process on CO Bryant and Sgt Bryant because

no one by those names at the George W. Hill Correctional Facility could be identified, such that

counsel believed these Defendants were either misidentified or did not exist.  (ECF Nos. 13 &

14.)  Freeman responded by filing a "Motion to Replace Defendants," in which he alleged that

upon further investigation, the Defendants identified as Correctional Officer Bryant and Sgt

Bryant in the initial Complaint should instead be identified as Correctional Officer Christopher

and Sgt Bryan.  (ECF No. 20.)  Freeman also moved to file an amended complaint.  (ECF No.

21.)  In a November 22, 2023 Order, the Court granted Freeman leave to amend and denied the

remaining motions as moot "in anticipation of an amended complaint that names the proper

parties and sets forth all of the factual bases for Freeman's claims based on the August 2021

incident described in his initial Complaint."  (ECF No. 22 at 2.)  Freeman was directed to

"identify all defendants in the caption of the amended complaint in addition to identifying them

in the body of the amended complaint" and to "state the basis for [his] claims against each

defendant" in any amended complaint.  (*Id.*)

After being granted an extension of time, (ECF No. 26), Freeman returned with his pending Amended Complaint on December 26, 2023. (ECF No. 27.) Freeman alleges in the Amended Complaint that in August 2021, Correctional Officer Christopher woke him up and told him to get dressed. (Am. Compl. at 2.) As Freeman was putting his pants on, Lt. Moore entered his cell, and pulled Freeman from the bed by his shirt. (*Id.*) When Freeman asked Moore what was going on, he was allegedly told "to shut up" and was placed in handcuffs. (*Id.*)

When Freeman again inquired as to what was happening, Moore "handed his mace to CO Christopher [and] slammed [Freeman] to the ground." (*Id.*) Christopher then sprayed Freeman with the mace; Freeman also appears to allege that Christopher attempted to hit him but hit Moore instead. (*Id.*) Moore then "slammed [Freeman] onto the ground." (*Id.*) While on the ground, Freeman was "punched in the face and head" and kicked in the back, "resulting in a busted lip, chipped tooth and severe neck and back pain." (*Id*.) Freeman cried out for help and in response a "boot was placed on [his] neck," at which point Sgt. Bryan entered the cell and picked Freeman up off the ground. (*Id.*) Freeman alleges that his "face was burning from the mace, [his] lip [was] bleeding and [his] entire body was in pain." (*Id.*)

Bryan sent Freeman "to medical." (*Id.*) Freeman alleges that he was then put in a cell and "ignored by the medical staff for several hours." (*Id.* at 3.) He claims that the mace had been sprayed all over his body and clothes and was beginning to burn his skin, such that a nurse had correctional officers remove the mace-soaked clothing from his body. (*Id.*) Freeman "yelled for medical attention but Lt Moore kept denying [him]." (*Id.*) Freeman was then taken to the RHU, presumably a reference to the restricted housing unit, and placed in a cell without a mattress. (*Id.*) He "asked Lt. Moore for medical attention for [his] mouth and neck and back pains but was told to get over it." (*Id.*) Freeman also alleges that he was denied a shower for

three days, lacked "cosmetics" for sixty days and was not "provided any medical attention for [his] injuries," although he acknowledges that non-defendant Sgt Coleman gave him a bar of soap and a towel on his sixth day on the unit. (*Id.*)

Freeman's Amended Complaint is best construed as raising claims under the Eighth Amendment for excessive force and for deliberate indifference to his medical needs following the alleged use of force, including mace.[2]  Although Freeman did not clearly name all of the Defendants in the caption as instructed, (*see* ECF No. 22 at 2), it is apparent from the Amended Complaint and from the proceedings in this case that he intends to name two Defendants — Lt. Moore and Correctional Officer Christopher.[3]

Moore filed a Motion to Dismiss the Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  As to Freeman's excessive force claim, Moore acknowledges that Freeman "goes into some facts about his alleged abuse at the hands of correctional staff" but claims that he "fails to state the date and time of the event [despite Freeman's allegation that the incident occurred in August 2021 (*see* Am. Compl. at 2)], the duration and extent of the alleged assault by the Defendants, his own actions, and whether he

---

[2] The Court does not understand Freeman to be bringing claims based on the conditions in the restricted housing unit.  But even if he were, he does not provide any allegations tying responsibility for those conditions to the named Defendants.  Accordingly, even if he intended to bring such claims, they must be dismissed.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable).

[3] The Court does not understand Freeman to be bringing any claims against Bryan.  But even if he did so intend, Freeman has not alleged any plausible basis for a such a claim.  The only allegation pertaining to Bryan is that Bryan sent Freeman "to medical," after the incident with Moore and Christopher.  (Am. Compl. at 2.)  Since Bryan is alleged only to have assisted Freeman in obtaining medical treatment, there is no plausible basis for a claim against him based on the incident in the cell or the alleged delay in medical treatment once Freeman arrived at the medical unit.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

4

was compliant with the Defendants' requests [although it is not clear what "requests" Moore refers to since Freeman does not allege that any requests were made other than that he was told by Christopher to get dressed and began to comply by putting on his pants]." (Def.'s Mot. at 10.) Moore further alleges that there is "no record of any altercation" with Freeman and staff during August 2021, when the incident was alleged to have occurred, and that "most, if not all, of the alleged force cannot be attributed to Defendant Lt. Moore." (*Id.* at 10-11.) As an alternative to dismissal, Moore asks for a more definite statement to clarify whether the August 2021 use of force incident that forms the basis for Freeman's claims instead occurred on June 11, 2021 because the facility's records show that "the only encounter with [Freeman], Defendant Christopher, and Defendant Moore where pepper spray was used during that time period was on June 11, 2021."[4] (*Id.* at 13.) Turning to Freeman's deliberate indifference claim, Moore contends that Freeman failed to allege a serious medical need or any basis for deliberate indifference, especially since Freeman "admitted that he was treated by medical providers at the prison but is merely not satisfied with the care he received." (*Id.* at 12.)

In response, Freeman reiterates the facts alleged in his Amended Complaint. (Pl.'s Resp. (ECF No. 30).) He contends that Defendants Moore and Christopher used excessive force on

---

[4] Moore notes that Freeman failed to name Christopher as a Defendant in the caption of the Amended Complaint, (Def.'s Mot. at 13), but it is apparent from his Motion that he, like the Court, understands Freeman to have intended Christopher to be a Defendant in this case despite the error in not naming him in the caption. Since the Amended Complaint added Christopher as a Defendant, he had not yet been served at the time the pleading was filed. Accordingly, the Court issued an Order on February 26, 2024 directing Freeman to complete and return an enclosed U.S. Marshal Service of Process Receipt and Return Form USM-285 for Defendant Christopher so that the Court could direct service. (ECF No. 31.) Freeman failed to return the form in the time frame set forth in the Order, so the Court has not yet been able to direct service on Defendant Christopher in accordance with 28 U.S.C. § 1915(d) and Federal Rule of Civil Procedure 4(c)(3).

him because Moore slammed him to the ground, and both Defendants struck him several times while he was on the ground and placed a boot on his neck.  (*Id.* at 2.)  Freeman also notes that he obeyed all orders given to him by the officers.[5]  (*Id.* at 3.)  Freeman adds that Defendant Moore "did not offer [him] medical attention" for his injuries he suffered "during the assault," and alleges that he was "denied a shower for six days even though [he] still had pepper spray on him."  (*Id.* at 3-4.)

## II.    STANDARDS OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents

_____

[5] This fact is not alleged in the Amended Complaint.

if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed contains facts sufficient to state a plausible . . . claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally). Additionally, since Freeman is proceeding *in forma pauperis*, the Court may independently screen his Amended Complaint and dismiss it "at any time" pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) if, among other things, it fails to state a claim. *Brown v. Sage*, 941 F.3d 655, 662 (3d Cir. 2019) (*en banc*) ("To repeat, the statute requires a court to dismiss an IFP complaint 'at any time' if it determines that the complaint is frivolous, malicious, or fails to state a claim."). The standard under this screening provision is the same standard that governs a dismissal under Rule 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

As for Defendant Moore's alternative motion for a more definite statement, a party may "move for a more definite statement of a pleading" in response to a pleading that is "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). A motion for a more definite statement under Rule 12(e) is "the best procedural tool available to the defendant to obtain the factual basis underlying a plaintiff's claim for relief" when a pleading does not disclose the facts underlying a plaintiff's claims. *Thomas v. Indep. Twp.*, 463 F.3d 285, 301 (3d Cir. 2006). "Motions for a more definite statement are highly disfavored, as Federal Rule of Civil Procedure 8(a)(2) requires only that a pleading contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Altimari v. Bucks Cnty. R.R. Pres. & Restoration Corp.*, No. 21-2451, 2022 WL 1748534, at *3 (E.D. Pa. May 31, 2022) (internal

quotations omitted).  "Thus, a court should grant a motion pursuant to Rule 12(e) only 'if a pleading is so vague or ambiguous that the opposing party cannot reasonably be required to make a responsive pleading.'"  *Id.* (quoting *S.E.C. v. Saltzman*, 127 F. Supp. 2d 660, 668 (E.D. Pa. 2000)); *see also Seamans v. Tramontana*, No. 13-0698, 2013 WL 5728670, at *3 (M.D. Pa. Oct. 22, 2013) ("[T]he pleading must be so unintelligible that a court cannot determine one or more potentially valid claims on which a party may proceed to require a more definite statement.").

## III.   DISCUSSION

Freeman brings his claims pursuant to § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *Rode*, 845 F.2d at 1207; *see Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original).  For the following reasons, Freeman may proceed at this time on his excessive force claims against Defendants Christopher and Moore.  His remaining claims will be dismissed for failure to state a claim.

### A.  Excessive Force

The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency.  *See Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992).  "Force that is used 'maliciously and sadistically for the very purpose of causing harm' violates the Eighth Amendment."  *Young v. Martin*, 801 F.3d 172, 180

(3d Cir. 2015) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).  The factors used to

determine whether the force applied was excessive include:  "(1) 'the need for the application of

force'; (2) 'the relationship between the need and the amount of force that was used'; (3) ''the

extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as

reasonably perceived by responsible officials on the basis of the facts known to them'; and (5)

'any efforts made to temper the severity of a forceful response.'"  *Brooks v. Kyler*, 204 F.3d 102,

106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).  The inquiry is driven

"by the extent of the force and the circumstances in which it is applied; not by the resulting

injuries."  *Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002).  "The use of chemical agents to

subdue recalcitrant prisoners is not cruel and unusual when reasonably necessary."  *Gibson v.

Flemming*, 837 F. App'x 860, 862 (3d Cir. 2020) (quoting *Soto v. Dickey*, 744 F.2d 1260, 1270

(7th Cir. 1984)); *see also Passmore v. Ianello*, 528 F. App'x 144, 147 (3d Cir. 2013) (*per

curiam*) (explaining that the use of chemical agents is not a *per se* constitutional violation).

　　　As the basis for his excessive force claims, Freeman alleges that Defendants Christopher

and Moore woke him up, pulled him from his bed while he was putting his pants on after he was

told to get dressed, and, while he was handcuffed, slammed him to the ground and sprayed him

with mace when he asked what was going on.  (Am. Compl. at 2.)  He further alleges that while

he was on the ground, these Defendants punched him in the face and head and kicked him in the

back, causing him to sustain "a busted lip, chipped tooth and severe neck and back pain."  (*Id.*)

He also claims that a boot was placed on his neck when he cried out for help.  (*Id.*)  Based on

these allegations, Court understands Freeman to be alleging that the Defendants handcuffed him,

pepper-sprayed him, and slammed him to the ground after he asked a question, and then kicked

and punched him while he was lying on the ground in handcuffs.  Although the Amended

Complaint does not specify which Defendant is responsible for each punch or kick, the allegations support an inference that both Defendants participated in the use of force against Freeman, including while he was on the ground.  Taking these allegations and the reasonable inferences they support in Freeman's favor, Freeman has alleged sufficient factual matter to proceed on his excessive force claims against Defendants Moore and Christopher.  *See, e.g.*, *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (*per curiam*) (inmate's allegations that he was slammed to the ground and "punched, kicked, kneed, choked, and body slammed maliciously and sadistically and without any provocation, . . . which allegedly left [him] with a bruised heel, back pain, and other injuries requiring medical treatment" stated an excessive force claim); *Baker v. Crookus*, No. 21-4615, 2021 WL 5711830, at *3 (E.D. Pa. Dec. 1, 2021) (permitting excessive force claim to proceed past screening where plaintiff alleged that correctional officer's "use of OC spray was wholly unprompted and that lesser measures may have been appropriate"); *Matthews v. Villella*, 381 F. App'x 137, 139 (3d Cir. 2010) (*per curiam*) ("We find that Matthews has stated a plausible claim for relief by alleging that Villella acted wantonly and maliciously by striking his handcuffed hands with a billy club, without any apparent provocation.").

Although there may be other facts and circumstances that affect whether Freeman ultimately succeeds on his excessive force claims, the absence of additional clarifying details sought by Moore is not fatal to Freeman's claims at the pleading stage.  Indeed, the extent of each Defendant's participation in these events and further details about the context in which this incident occurred are matters that can be clarified during discovery.  *Cf. Daniels v. City of Philadelphia*, No. 16-4270, 2017 WL 25382, at *5 (E.D. Pa. Jan. 3, 2017) ("The discovery process will help sort out whether Defendant police officers used excessive force when they

arrested Daniels.").  Similarly, whether the incident occurred in June or August of 2021 is a factual matter that can be determined during discovery, and does not require clarification at the pleading stage given the other details included in the Amended Complaint about who was involved in the incident and what occurred.

### B. Deliberate Indifference

Freeman also raises claims based on the alleged denial of medical treatment for injuries he sustained following the use of force upon him.  To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering."  *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.  Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Freeman has failed to allege a plausible basis for a deliberate indifference claim against either Defendant.  The Amended Complaint is completely devoid of any allegations that could support a deliberate indifference claim against Defendant Christopher.  Rather, Freeman's deliberate indifference claim is predominately based on the allegation that he "yelled for medical attention but Lt. Moore kept denying me."  (Am. Compl. at 3.)  It appears that, at the time Freeman sought medical attention from Moore, Freeman was already in the medical unit and that other personnel either had or were in the process of removing Freeman's mace-soaked clothing. (*Id.*)  This allegation therefore does not support a claim against Lt. Moore since it is unclear under the circumstances what additional medical care Freeman was seeking from Moore and why Moore's failure to provide that care was allegedly indicative of deliberate indifference.  *See Passmore*, 528 F. App'x at 148-49 (twenty-minute delay in providing a shower and medical treatment to a prisoner subjected to pepper spray "does not amount to deliberate indifference to a serious medical need").  Freeman also alleges that, after he was taken to the RHU from the medical department, he "asked Lt. Moore for medical attention for [his] mouth and neck and back pains but was told to get over it."  (*Id.*)  It is not clear, however, that Freeman's injuries rose to the level of serious medical needs, nor does the Amended Complaint support an inference that Moore, a non-medical defendant, was deliberately indifference to any such needs by denying care at that time since Freeman had apparently just come from the medical department.  Indeed, there are no allegations in the Amended Complaint from which the Court could infer that Moore had reason to believe Freeman did not receive adequate treatment in the medical department or that Freeman was suffering from such an obvious condition that failure to provide care after being taken to and then released from the medical unit amounted to deliberate indifference.  *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) ("[A]bsent a reason to believe (or actual

knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a

non-medical prison official . . . will not be chargeable with . . . deliberate indifference.").  In

other words, as pled, the Amended Complaint does not state a plausible claim against Moore for

deliberate indifference to Freeman's serious medical needs.  *See generally Iqbal*, 556 U.S. at 678

("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops

short of the line between possibility and plausibility of entitlement to relief." (internal quotations

omitted)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here

have not nudged their claims across the line from conceivable to plausible, their complaint must

be dismissed.").

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss Freeman's claims with the exception of

his excessive force claims against Defendants Moore and Christopher as described above.  It is

unclear whether Freeman can cure the defects in the dismissed claims, however, the Court will

give him an opportunity to file a second amended complaint prior to moving forward with

discovery.   Further, if Freeman seeks to pursue any claims against Defendant Christopher,

whether in his Amended Complaint or in any second amended complaint, he must complete and

return a USM-285 form to the Court, so that the Court can direct service on Christopher.

An Order follows, which contains further instructions for proceeding.


**BY THE COURT:**


**/s/ Juan R. Sánchez**
**JUAN R. SÁNCHEZ, J.**